

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KARON DESHUN THOMAS,

     Petitioner,

v.

TONY TRIERWEILER,

     Respondent,

Civil No. 2:18-CV-10910
HONORABLE NANCY G. EDMUNDS
UNITED STATES DISTRICT JUDGE

_____/

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO APPEAL *IN FORMA PAUPERIS*

Karon DeShun Thomas, ("Petitioner"), confined at the Bellamy Creek Correctional Facility in Ionia, Michigan, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* application, petitioner challenges his convictions for second-degree murder, M.C.L.A. 750.317; assault with intent to commit murder, M.C.L.A. 750.83; carrying a dangerous weapon with unlawful intent, M.C.L.A. 750.226; and three counts of possession of a firearm in the commission of a felony, M.C.L.A. 750.227b. For the reasons that follow, the petition for writ of habeas corpus is DENIED.

## I. BACKGROUND

Petitioner was convicted following a jury trial in the Saginaw County Circuit Court, in which he was jointly tried with co-defendants Evellis McGee and Isaiah Clark. Petitioner was acquitted of a charge of conspiracy to commit first-degree murder.

This Court recites verbatim the relevant facts relied upon by the Michigan Court of

Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. §

2254(e)(1). See Wagner v. Smith, 581 F.3d 410, 413 (6th Cir. 2009):

> These cases arise out of a May 23, 2013 shooting that occurred shortly before 6:00 p.m. in the parking lot of Saginaw's Florence Event Hall, where Saginaw High School students had gathered with friends and family for an informal pre-prom party. The prosecution theorized that animosity between those associated with Sheridan Park neighborhood and those associated with Saginaw's east side precipitated the shooting. Evidence indicated that defendants Thomas and McGee were from the east side, while defendant Clark, Keon Bowens, a fourth defendant who was acquitted of all charges, and Anterio Patton, the presumed target of the shooting, were from Sheridan Park.
>
> Pamela Jordan reported that, shortly before the shooting began, Thomas, McGee, and several other young men approached Patton, Clark, Bowens, and others gathered around the black Caprice that Patton had driven to the pre-prom party. The witness recounted that Thomas's group approached Patton's group as if "they were wanting trouble." After she had taken a picture of Patton and his date and was walking away, she heard someone from Thomas's group said to someone in Patton's group, "I heard you was looking for me. I got nine rounds for you." Malik Jordan testified that the men by the Caprice were flashing weapons and gang signs, while Trenika Shivers, Patton's aunt, said she saw McGee standing beside Thomas, and saw Thomas flash his gun. Shivers opined that Thomas's was not an aggressive move, nor was it much noticed by Patton's group. According to Malik, Thomas pulled his gun, held it by his side, and started to back up. Shaquana Reid indicated that McGee was at Thomas's side, acting as if he were about to draw his gun.
>
> Several witnesses testified to a sense that something was going to happen. Tangela Owens said she was walking around taking pictures when her daughter, Tonquinisha "Ne–Ne" McKinley, approached her and told her they had to leave because something was "getting ready to go down." Pamela Jordan said that, just after she heard the threatening words spoken toward Patton's group, her son, Malik, approached her and said, "mom, it's about to be some stuff," and began pushing her along, away from the area where the black Caprice was parked. Trenika Shivers said she sensed there was about to be a fight and started to get in the Caprice to drive it out of the way when defendant Clark pushed her all the way in the car and said, "ma, get out the way." According to Malik Jordan, after Thomas pulled his weapon, held it by his side, and started backing up, defendant Clark emerged from the Caprice and started shooting. Marguerie Johnson

recalled that she was standing by defendants Thomas and McGee when the shooting started, and she saw them shooting back in the direction of Patton and defendant Clark. Several witnesses said that it sounded like shots were coming from everywhere. A firearms expert from the Michigan State Police testified that police recovered 36 cartridge casings fired from five semiautomatic weapons. Ne–Ne McKinley was fatally shot in the face, while three other innocent bystanders were wounded.

*People v. Thomas*, No. 323358, 2016 WL 4645822, at *1–2 (Mich. Ct. App. Sept. 6, 2016.

Petitioner's conviction was affirmed on appeal. *Id., lv. den.* 500 Mich. 981, 894 N.W.2d 44 (2017).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. Defendant was denied a fair trial by the trial court's denial of a motion for separate trials when one jury determined the fate of four defendants with antagonistic and irreconcilable theories.

II. The trial court erred when admitting Facebook pictures and postings and when admitting prior bad acts when the evidence was not relevant or material, not for a proper purpose, and/or substantially outweighed by unfair prejudice.

III. Defendant's convictions for second-degree murder and assault with intent to murder must be overturned where there was insufficient evidence to convict him of those crimes.

IV. Defendant was denied his due process right to a fair trial when the trial judge instructed the jury as to mutual combatants.

## II. STANDARD OF REVIEW

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect

3

to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010)((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002)(*per curiam*)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the

correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. A habeas petitioner should be denied relief as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *See Woods v. Etherton*, 136 S. Ct. 1149, 1152 (2016).

### III. DISCUSSION

#### A. Claim # 1. The separate trial claim.

Petitioner initially argues that the trial judge erred in refusing to grant him a separate trial from his co-defendants. Petitioner argues that severance was required because the self-defense claim advanced by petitioner and co-defendant McGee was antagonistic and irreconcilable with co-defendant Clark's defense in which he denied having a weapon and shooting anyone.

The Michigan Court of Appeals rejected the claim:

> In this case, the trial court determined that separate trials were not mandated because the defenses of the instant defendants were not mutually exclusive as defined by [*People v.*] *Hana*. [1] We agree. Notwithstanding defendants' assertions to the contrary, the jury did not have to disbelieve one defendant in order to believe another. *Id.* Michigan State Police scene reconstruction and firearms reports confirmed that there were at least five shooters, and witnesses testified that shots were coming from everywhere. Photographs taken by attendees at the pre-prom party show a number of people around the black Caprice, the area from whence Malik Jordan said the initial shots came. Under these circumstances, Clark's assertion that he did not have a weapon would not necessarily undermine McGee and Thomas's assertions that they fired their guns in self-defense.

---

[1] 447 Mich. 325, 524 N.W. 2d 682 (1994).

The jury could reasonably believe that Clark did not have a weapon and that McGee fired toward someone near the black Caprice other than Clark or Bowens in self-defense. Therefore, because defendants failed to demonstrate that their defenses were mutually exclusive under *Hana*, the trial court did not abuse its discretion by denying defendants' motions for severance pursuant to MCR 6.121(C). In addition, because defendants did not meet the standard for separate trials, they also did not meet the standard for separate juries.

*People v. Thomas*, 2016 WL 4645822, at * 3.

A criminal defendant is not entitled to a separate trial merely because he or she may have had a better chance for acquittal in a separate trial, *Zafiro v. United States*, 506 U.S. 534, 540 (1993), nor does a criminal defendant have a right to a separate trial merely because the defendant and the co-defendant present antagonistic defenses. *Stanford v. Parker*, 266 F. 3d 442, 458 (6th Cir. 2001). The Supreme Court, in fact, has indicated that "[M]utually antagonistic defenses are not prejudicial *per se*." *Zafiro v. United States*, 506 U.S. at 538. A court should grant severance "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* at 539. A habeas petitioner who seeks habeas relief based on a state trial court's refusal to sever his or her trial from his or her co-defendant's trial bears a very heavy burden. *Stanford*, 266 F. 3d at 459. Joinder of defendants for trial is preferred, which creates a presumption in favor of joinder which must be overcome by the party seeking severance. *See Foster v. Withrow*, 159 F. Supp. 2d 629, 641 (E.D. Mich. 2001).

Petitioner is not entitled to habeas relief on his claim because he has failed to show he and his co-defendant Clark had mutually antagonistic defenses. Clark's defense that the evidence established at most that he was merely present when the crime took place

was not antagonistic to petitioner's defense (or Mr. McGee's) that he acted in self-defense. Petitioner has failed to show that his self- defense claim and Clark's defense that he did not possess a weapon were mutually antagonistic or irreconcilable. A "defendant's claim of self-defense is not antagonistic with his codefendant's reasonable doubt argument." *People v. Mercado*, 397 Ill. App. 3d 622, 630, 921 N.E.2d 756, 764 (2009), *See also White v. Medina*, 464 F. App'x 715, 720 (10th Cir. 2012)(petitioner not entitled to habeas relief based on trial court's failure to grant separate trials where the Colorado Court of Appeals reasonably concluded that petitioner's self-defense claim was not mutually antagonistic to the co-defendant's mistake of fact defense). Further, there has been no showing that Clark's defense was "predicated solely on" petitioner's guilt. The jury was free to believe that petitioner shot his weapon in self-defense and that Clark's mere presence at the crime scene was insufficient to convict him. Antagonistic defenses occur "when one person's claim of innocence is predicated solely on the guilt of a co-defendant." *United States v. Harris,* 9 F. 3d 493, 501 (6th Cir. 1993). Because petitioner has failed to show that Clark's defense was irreconcilably antagonistic to his own, petitioner is not entitled to relief on his first claim.

### B. Claim # 2. The evidentiary law claim.

Petitioner next challenges the introduction of certain evidence at trial. Petitioner argues that the trial judge erred in admitting a posting that was allegedly from petitioner's Facebook page which contained a picture of McKinley, the initials "RIP," and a post reading, "Shuldd I let em kill me or turn myself ndd. I'm facing life nd da gtt dam pin ... rest in peace Ne–Ne, catch me nd traffic." Petitioner argues that this evidence should have been excluded because the prosecutor failed to provide a sufficient foundation to

establish that it was petitioner and not some other person who posted this on petitioner's Facebook page. Petitioner also challenges the admission of gang photo evidence, because the evidence was irrelevant, more prejudicial than probative, and admitted solely to establish petitioner's propensity to commit the charged crime, in violation of M.R.E. 404(b).

It is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). A federal court is limited in federal habeas review to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United States. *Id.* Thus, errors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not reviewable by a federal court. *Seymour v. Walker,* 224 F. 3d 542, 552 (6th Cir. 2000); *See also Stephenson v. Renico,* 280 F. Supp. 2d 661, 666 (E.D. Mich. 2003).

Petitioner is not entitled to habeas relief on his claim that the prosecutor failed to establish a foundation for the admission of the Facebook posting because "[t]he adequacy of the foundation for the admission of evidence is governed by the state evidence rules, not the federal Constitution." *Rhea v. Jones*, 622 F. Supp. 2d 562, 590 (W.D. Mich. 2008). Therefore, in the absence of any clearly established law from the Supreme Court that the admission of evidence at a state criminal trial without an adequate foundation violates due process, petitioner is not entitled to habeas relief on this claim. *See Wilson v. Woodford,* 682 F. Supp. 2d 1082, 1090 (C.D. Cal. 2010).

Petitioner's claim that he was denied a fair trial by the admission of irrelevant and highly prejudicial evidence cannot form the basis for habeas relief, because it involves a state law evidentiary issue. *See Hall v. Vasbinder*, 551 F. Supp. 2d 652, 676 (E.D. Mich.

8

2008); *rev'd on other grds* 563 F.3d 222 (6th Cir. 2009); *See also Oliphant v. Koehler,* 451 F. Supp. 1305, 1308 (W.D. Mich. 1978).

Petitioner's claim that either the Facebook posting or the gang photo evidence should have been excluded under M.R.E. 403 for being more prejudicial than probative does not entitle petitioner to habeas relief. The Sixth Circuit observed that "[t]he Supreme Court has never held (except perhaps within the capital sentencing context) that a state trial court's admission of *relevant* evidence, no matter how prejudicial, amounted to a violation of due process." *Blackmon v. Booker,* 696 F. 3d 536, 551 (6th Cir. 2012)(emphasis original). The Michigan Court of Appeals concluded that all of this evidence was relevant and admissible under Michigan law for various reasons. *People v. Thomas,* 2016 WL 4645822, at * 5-6. This Court must defer to that determination.

Petitioner's claim that the state court violated M.R.E. 404(b) or any other provision of state law by admitting improper character evidence is non-cognizable on habeas review. *See Bey v. Bagley,* 500 F. 3d 514, 519 (6th Cir. 2007); *Estelle,* 502 U.S. at 72 (Supreme Court's habeas powers did not permit Court to reverse state court conviction based on their belief that the state trial judge erred in ruling that prior injury evidence was admissible as bad acts evidence under California law); *Dowling v. U.S.,* 493 U.S. 342, 352-53 (1990)(admission at defendant's bank robbery trial of "similar acts" evidence that he had subsequently been involved in a house burglary for which he had been acquitted did not violate due process). The admission of any "prior bad acts" or "other acts" evidence against petitioner at his state trial does not entitle him to habeas relief, because there is no clearly established Supreme Court law which holds that a state violates a

habeas petitioner's due process rights by admitting propensity evidence in the form of "prior bad acts" evidence. *See Bugh v. Mitchell,* 329 F. 3d 496, 512 (6th Cir. 2003).

Finally, the admission of any evidence that petitioner might have been in a street gang did not render petitioner's trial fundamentally unfair because such evidence was relevant to petitioner's criminal motive. *See Blackmon,* 696 F. 3d at 556-57 (no habeas relief where evidence of gang membership relevant to witness bias and criminal motive). Petitioner is not entitled to relief on his second claim because the Michigan Court of Appeals' decision was not objectively unreasonable. *Id.* at 557.

### C. Claim # 3. The sufficiency of evidence claim.

Petitioner next contends that there was insufficient evidence to convict.

The Supreme Court held that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364 (1970). But the crucial question in reviewing the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 318 (1979). A court need not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after the evidence is viewed in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318-19 (internal citation and footnote omitted)(emphasis in the original).

A federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim merely because the federal court disagrees with the

state court's resolution of that claim. Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. *See Cavazos v. Smith,* 565 U.S. 1, 2 (2011). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.* Indeed, for a federal habeas court reviewing a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012). A state court's determination that the evidence does not fall below that threshold is entitled to "considerable deference under [the] AEDPA." *Id.*

Petitioner initially argues that the prosecutor failed to disprove petitioner's self-defense claim.

Petitioner's claim is non-cognizable on habeas review. Under Michigan law, self-defense is an affirmative defense. *See People v. Dupree,* 486 Mich. 693, 704, 712; 788 N.W. 2d 399 (2010). "An affirmative defense, like self-defense, 'admits the crime but seeks to excuse or justify its commission. It does not negate specific elements of the crime.'" *People v. Reese*, 491 Mich. 127, 155, n. 76; 815 N.W.2d 85 (2012)(quoting *Dupree,* 486 Mich. at 704, n. 11). Although under Michigan law the prosecutor is required to disprove a claim of self-defense, *See People v. Watts*, 61 Mich. App. 309, 311, 232 N.W.2d 396, 398 (1975), "[p]roof of the nonexistence of all affirmative defenses has never been constitutionally required...." *See Smith v. United States,* 568 U.S. 106, 110 (2013)(quoting *Patterson v. New York*, 432 U.S. 197, 210 (1977)). The Supreme Court and the Court of Appeals for the Sixth Circuit have rejected the idea that the Constitution

requires a prosecutor to disprove self-defense beyond a reasonable doubt. *See Gilmore v. Taylor*, 508 U.S. 333, 359 (1993)(Blackmun, J., dissenting)("In those States in which self-defense is an affirmative defense to murder, the Constitution does not require that the prosecution disprove self-defense beyond a reasonable doubt"); *Martin v. Ohio*, 480 U.S. 228, 233-36 (1987); *see also Allen v. Redman*, 858 F.2d 1194, 1197 (6th Cir.1988)(explaining that habeas review of sufficiency-of-the-evidence claims is limited to elements of the crimes as defined by state law and citing *Engle v. Isaac*, 456 U.S. 107 (1982), and *Duffy v. Foltz*, 804 F.2d 50 (6th Cir. 1986)). Therefore, "the due process 'sufficient evidence' guarantee does not implicate affirmative defenses, because proof supportive of an affirmative defense cannot detract from proof beyond a reasonable doubt that the accused had committed the requisite elements of the crime." *Caldwell v. Russell*, 181 F.3d 731, 740 (6th Cir. 1999). Petitioner's claim that the prosecutor failed to disprove his affirmative defense of self-defense is non-cognizable on habeas review. *Id.; Allen v. Redman*, 858 F. 2d at 1200.

However, even if this Court were to determine that petitioner's claim was cognizable, he would not be entitled to habeas relief. The Michigan Court of Appeals rejected petitioner's claim:

> Viewing the facts in the light most favorable to the prosecution, leaves no reasonable doubt that Thomas and McGee were aggressors as described in [*People v.*] Van Horn. [2] Thomas, McGee and their associates approached Patton, Clark, Bowens and their associates, both sides indicated that they were armed, and threatening words were spoken. McGee appeared poised to draw his weapon, and Thomas did draw his, placing it by his side and beginning to back up, an action the jury might reasonably have interpreted as retreat, but just as reasonably have interpreted as moving into a position to shoot and run. Thomas and McGee's contention that they responded in self-defense ignores their role as aggressors, as ones "inviting trouble."

---

[2] 64 Mich. App. 112, 235 N.W. 2d 80 (1975).

> Consequently, even if they did act in self-defense, because a jury could reasonably have found them to be the initial aggressors, their returning fire after being fired upon "does not meet the elements of lawful self-defense."

*People v. Thomas*, 2016 WL 4645822, at * 8 (additional citations omitted).

Under Michigan law, one can act lawfully in self-defense if he or she has an honest and reasonable belief that he or she is in danger of serious bodily harm or death, as judged by the circumstances as they appeared to the defendant at the time of the act. *Blanton v. Elo*, 186 F. 3d 712, 713, n. 1 (6th Cir. 1999)(citing *People v. Heflin*, 434 Mich. 482; 456 N.W. 2d 10 (1990)). To be lawful self-defense, the evidence must show that: (1) the defendant honestly and reasonably believed that he or she was in danger; (2) the danger feared was death or serious bodily harm or imminent forcible sexual penetration; (3) the action taken appeared at the time to be immediately necessary; and (4) the defendant was not the initial aggressor. *See Johnigan v. Elo,* 207 F. Supp. 2d 599, 608-09 (E.D. Mich. 2002)(citing *People v. Barker*, 437 Mich. 161, 165; 468 N.W. 2d 492 (1991); *People v. Kemp*, 202 Mich. App. 318, 322; 508 N.W.2d 184 (1993); *People v. Deason*, 148 Mich. App. 27, 31; 384 N.W.2d 72 (1985)).

In the present case, the Michigan Court of Appeals reasonably concluded that petitioner and McGee through their actions were the initial aggressors, defeating their self-defense claim.

Finally, to the extent that petitioner challenges the Michigan Court of Appeals' determination that as a matter of state law petitioner was not entitled to raise a self-defense claim because he was the initial aggressor, he would not be entitled to relief.

The United States Supreme Court has "repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged

13

conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). State courts are the "ultimate expositors of state law." *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). What is essential to establish an element of a crime, like the question whether a given element is necessary, is a question of state law, of which federal habeas review is not available. *See Sanford v. Yukins*, 288 F.3d 855, 862 (6th Cir. 2002). Likewise, "[D]ue process does not require that a defendant be permitted to present any defense he chooses. Rather, states are allowed to define the elements of, and defenses to, state crimes. " *See Lakin v. Stine,* 80 F. App'x. 368, 373 (6th Cir. 2003)(citing *Apprendi v. New Jersey*, 530 U.S. 466, 484-87 (2000); *McMillan v. Pennsylvania*, 477 U.S. 79, 84-86, (1986)). The circumstances under which a criminal defense may be asserted is thus a question of state law. *Id.* Moreover, a federal court on habeas review must distinguish a sufficiency of evidence claim from state law claims which are disguised as *Jackson* claims. *Sanford,* 288 F. 3d at 862 (citing *Bates v. McCaughtry*, 934 F.2d 99, 103 (7th Cir. 1991)). This Court must therefore defer to the Michigan Court of Appeals' construction of the elements of state crimes and possible defenses. *See e.g. Coe v. Bell*, 161 F.3d 320, 347 (6th Cir. 1998). Petitioner would therefore not be entitled to challenge the Michigan Court of Appeals' legal determination that self-defense is unavailable to a defendant if he or she was the initial aggressor.

Petitioner next contends that there was insufficient evidence to establish that he caused Ms. McKinley's death, so as to support his second-degree murder conviction, because his bullet was not the one that struck her.

The Michigan Court of Appeals rejected petitioner's claim. After noting that petitioner and his co-defendant McGee were prosecuted under an aiding and abetting

theory, *People v. Thomas*, 2016 WL 4645822, at * 9, the Michigan Court of Appeals concluded that the evidence was sufficient to convict petitioner of second-degree murder as an aider and abettor:

> It is undisputed that a bullet from someone's gun killed McKinley, thus satisfying the first element of the aiding and abetting theory. The actions of Thomas and McGee described above assisted the commission of the crime by creating or contributing to the tensions that erupted in gunfire, thus satisfying the second element. From these same actions, a jury could reasonably infer that defendants Thomas and McGee acted "in wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm[,]" thus satisfying the third element of aiding and abetting. Accordingly, viewed in a light most favorable to the prosecution, the evidence was sufficient to allow a rational trier of fact to conclude beyond a reasonable doubt that defendants Thomas and McGee committed second-degree murder under an aiding and abetting theory.

*Id.* at * 9 (internal citations omitted).

Under Michigan law, the elements of second-degree murder are: (1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse. *See Stewart v. Wolfenbarger,* 595 F. 3d 647, 654 (6th Cir. 2010)(citing *People v. Goecke,* 457 Mich. 442 463-64, 579 N.W.2d 868 (1998)). "[M]alice is defined as the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *Id.* (citing *People v. Aaron,* 409 Mich. 672, 728, 299 N.W.2d 304 (1980)). Malice for second-degree murder can be inferred from evidence that the defendant intentionally set in motion a force likely to cause death or great bodily harm. *Long v. Stovall,* 450 F. Supp. 2d 746, 753 (E.D. Mich. 2006)(citing *People v. Djordjevic,* 230 Mich. App. 459, 462; 584 N.W.2d 610 (1998)); *See also Hill v. Hofbauer,* 195 F. Supp. 2d 871, 885 (E.D. Mich. 2001). Additionally, "[t]he offense of second-degree murder 'does

15

not require an actual intent to harm or kill, but only the intent to do an act that is in obvious disregard of life-endangering consequences.'" *Stewart*, 595 F. 3d at 658 (quoting *People v. Aldrich*, 246 Mich.App. 101, 123; 631 N.W.2d 67 (2001)).

To support a finding under Michigan law that a defendant aided and abetted in the commission of a crime, the prosecutor must show that:

> 1. the crime charged was committed by the defendant or some other person;
> 2. the defendant performed acts or gave encouragement that assisted the commission of the crime; and
> 3. the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time he gave aid and encouragement.

*Riley v. Berghuis,* 481 F. 3d 315, 322 (6th Cir. 2007)(*citing People v. Carines*, 460 Mich. 750, 757-58; 597 N.W. 2d 130 (1999)).

In order to be guilty of aiding and abetting under Michigan law, the accused must take some conscious action designed to make the criminal venture succeed. *See Fuller v. Anderson,* 662 F. 2d 420, 424 (6th Cir. 1981). Aiding and abetting describes all forms of assistance rendered to the perpetrator of the crime and comprehends all words or deeds which might support, encourage, or incite the commission of the crime. *People v. Turner*, 213 Mich. App. 558, 568; 540 N. W. 2d 728 (1995). The quantum or amount of aid, advice, encouragement, or counsel rendered, or the time of rendering, is not material if it had the effect of inducing the commission of the crime. *People v. Lawton*; 196 Mich. App. 341, 352; 492 N. W. 2d 810 (1992). Finally, the Michigan Supreme Court has held that there is no language in Michigan's aiding and abetting statute that shows an intent by the Michigan Legislature "to abrogate the common-law theory that a defendant can be held criminally liable as an accomplice if: (1) the defendant intends or is aware that the principal is going to commit a specific criminal act; or (2) the criminal act committed by

the principal is an 'incidental consequence[ ] which might reasonably be expected to result from the intended wrong.'" *People v. Robinson,* 475 Mich. 1, 9; 715 N.W. 2d 44 (2006)(quoting Perkins, Criminal Law (3d ed.), pp. 741-43, 745). Thus, "a defendant is liable for the crime the defendant intends to aid or abet as well as the natural and probable consequences of that crime." *Id.,* at pp. 14-15.

To be convicted of aiding and abetting, the defendant must either possess the required intent to commit the crime or have participated while knowing that the principal had the requisite intent; such intent may be inferred from circumstantial evidence. *See Long v. Stovall,* 450 F. Supp. 2d at 753; *People v. Wilson*, 196 Mich. App. 604, 614; 493 N. W. 2d 471 (1992). The intent of an aider and abettor is satisfied by proof that he knew the principal's intent when he gave aid or assistance to the principal. *People v. McCray*, 210 Mich. App. 9, 14; 533 N. W. 2d 359 (1995). An aider and abettor's state of mind may be inferred from all of the facts and circumstances, including close association between the defendant and the principal, the defendant's participation in the planning and execution of the crime, and evidence of flight after the crime. *Turner,* 213 Mich. App. at 568-69.

In the present case, the evidence, when viewed most favorably to the prosecution, was sufficient to convict petitioner of second-degree murder on an aiding and abetting theory. Petitioner, McGee and several associates confronted Patton, Clark, Bowens and their friends. Persons on both sides stated that they were armed and verbal threats were made. Petitioner drew his weapon, placed it by his side and began to back up, which could have been interpreted as petitioner getting into position to shoot and run. During the subsequent confrontation, shots were fired. One of the bullets struck and killed Ms.

McKinley. The jurors could have rationally concluded that petitioner and McGee intentionally set into motion a force likely to cause death or great bodily harm. At the very least, petitioner's act of confronting several persons with a firearm in a crowded area while some of his associates did the same showed "the intent to do an act that is in obvious disregard of life-endangering consequences." *Stewart*, 595 F. 3d at 658. Petitioner's act of confronting persons with a firearm in an area with large numbers of persons present at a minimum showed a wanton and reckless disregard on petitioner's behalf that death or great bodily harm could result. Petitioner would be liable for killing Ms. McKinley under an aiding and abetting theory, even if he was not the actual shooter. The Michigan Court of Appeals' determination that there was sufficient evidence to convict petitioner of second-degree murder was an objectively reasonable application of clearly established federal law, where there was compelling evidence that petitioner aided and abetted this crime. See *Dillard v. Prelesnik,* 156 F. Supp. 2d 798, 808-09 (E.D. Mich. 2001).

Petitioner finally argues that there was insufficient evidence of a specific intent to kill to support his conviction for assault with intent to commit murder.

The Michigan Court of Appeals rejected petitioner's claim:

Viewing the evidence in the light most favorable to the prosecution, and resolving all conflicts in favor of the prosecution, the evidence is sufficient to allow a rational trier of fact to conclude beyond a reasonable doubt that Thomas and McGee assaulted Patton with the intent to murder. It is undisputed that Thomas and McGee assaulted Patton by firing their weapons at him. Witnesses testified that defendants Thomas and McGee fired their weapons in the direction of Patton. Marguerie Johnson said that Patton appeared to be the target because "he was the only one over in that direction and had the music and all that stuff playing." Pamela Jordan testified that, although she did not see who spoke them, the threatening words were spoken "towards" Patton. In addition, the prosecution contends that the number of cartridge cases found at the scene further supports the assault with intent to murder convictions because a jury could reasonably infer that Thomas, McGee, and the other defendants intended to kill when

they repeatedly pulled the triggers on their guns. Further, had the assault of Thomas and McGee on Patton been successful, there can be no doubt that the result would have been murder. This evidence, the evidence presented of rival gang affiliations, and the reasonable inferences that may be drawn from all of the evidence, are sufficient to support the jury's conviction of Thomas and McGee for assault with intent to kill.

*People v. Thomas,* 2016 WL 4645822, at * 10 (internal citations omitted).

Under Michigan law, the elements of assault with intent to commit murder in Michigan are: (1) an assault; (2) with an actual intent to kill; (3) which if successful, would make the killing murder. *See Warren v. Smith,* 161 F. 3d 358, 361 (6th Cir. 1998); *See also Steele v. Withrow,* 157 F. Supp. 2d 734, 740 (E.D. Mich. 2001). The intent to kill element does not equate with murder. *Warren,* 161 F. 3d at 361 (citing *People v. Taylor,* 422 Mich. 554; 375 N.W.2d 1, 7 (1985)). Thus, an intent to kill for purposes of this offense may not be proven by an intent to inflict great bodily harm or a wanton and wilful disregard of the likelihood that the natural tendency of the acts will likely cause death or great bodily harm. *Id.* Therefore, a conviction for assault with intent to commit murder must be premised upon a defendant's specific intent to kill. *Steele,* 157 F. Supp. 2d at 740 (citing *People v. Edwards,* 171 Mich.App. 613, 620; 431 N.W. 2d 83 (1988)). The intent to kill, for purposes of the crime of assault with intent to commit murder, need not be proved by direct, positive, or independent evidence, and the trier of fact may draw reasonable inferences from the facts and evidence in determining the existence of an intent to kill. *See Taylor,* 422 Mich. at 567-68. In determining the defendant's intent, a court may take into account "[t]he nature of the defendant's acts constituting the assault; the temper or disposition of mind with which they were apparently performed, whether the instrument and means used were naturally adapted to produce death, his conduct and declarations

prior to, at the time, and after the assault, and all other circumstances calculated to throw light upon the intention with which the assault was made." *Id.* at 568 (quoting *Roberts v. People*, 19 Mich. 401, 415-16 (1870)). The use of a lethal weapon will support an inference of an intent to kill. *Steele,* 157 F. Supp. 2d at 740; *People v. Ray*, 56 Mich. App. 610, 615; 224 N.W. 2d 735 (1974).

In the present case, there was sufficient evidence for a rational trier of fact to conclude that petitioner specifically intended to kill Patton. Evidence was presented at trial that petitioner and Patton were in rival street gangs or associations. Before the shooting, there was a confrontation between the two groups. The fact that petitioner intentionally pointed his loaded firearm at Patton, aimed in his direction, and fired several shots was sufficient evidence from which a reasonable factfinder could find beyond a reasonable doubt that petitioner actually intended to kill the victim. *See Johnigan v. Elo,* 207 F. Supp. 2d 599, 608 (E.D. Mich. 2002). Moreover, the fact that petitioner fired multiple gunshots at Patton also supports a finding that petitioner intended to kill the victim. *See Steele v. Withrow,* 157 F. Supp. 2d at 740. Petitioner is not entitled to habeas relief on his third claim.

### D. Claim # 4. The jury instruction claim.

Petitioner lastly argues that the judge erred in instructing the jurors on the concept of mutual combat.

The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack upon the constitutional validity of a state court conviction is much greater than the showing required when reviewing such an instruction in a direct appeal. The question in such a collateral proceeding is whether the ailing instruction so

infected the entire trial that the resulting conviction violates due process, not simply whether the instruction is undesirable, erroneous, or even "universally condemned," and an omission or incomplete instruction is less likely to be prejudicial than a misstatement of the law. *Henderson v. Kibbee*, 431 U.S. 145, 154-155 (1977). Any ambiguity, inconsistency or deficiency in a jury instruction does not by itself necessarily constitute a due process violation. *Waddington v. Sarausad*, 555 U.S. 179, 190 (2009). It is not enough that there might be some "slight possibility" that the jury misapplied the instruction. *Id.* at 191.

The Michigan Court of Appeals rejected petitioner's claim:

> We first find that the trial court did not abuse its discretion by granting the prosecutor's request for a mutual combat instruction. As already described, witnesses testified that defendants Thomas and McGee and several companions intentionally confronted Patton, defendant Clark and their associates; one witness testified that they approached "as if they wanted trouble." Both sides were flashing guns and posturing, someone in Thomas's group spoke threatening words to someone in Patton's group, and several people discerned that something bad was about to happen and began to leave the area. A jury could reasonably infer from this testimony that defendants were signaling their mutual intent and willingness to engage in a physical altercation. Therefore, the trial court was required to give the mutual combat instruction requested by the prosecution.

> Next, regarding defendant Thomas's contention that the format of the instruction "dilut[ed] the instructions on self-defense," and defendant McGee's contention that the instruction was prejudicially skewed toward mutual combat, our review of the instruction as a whole reveals no error. In addition to instructing the jury that mutual combatants were not entitled to assert self-defense for acts committed during mutual combat, the trial court properly instructed the jury on self-defense, as well as on the fact that a person suddenly, fiercely, and violently attacked does not have a duty to retreat. The trial court also instructed the jury that it was the prosecutor's burden to prove that defendants had not acted in self-defense. Given the foregoing, we find no error or abuse of discretion with respect to the trial court's instructions on mutual combat.

*People v. Thomas*, 2016 WL 4645822, at * 11–12 (internal citations omitted).

Federal courts are bound by the state courts' interpretation of their own laws. *See Mullaney v. Wilbur*, 421 U.S. at 690-91. The nature of a particular jury instruction that is given is a matter of state law, and a federal court is not at liberty to grant a writ of habeas corpus simply because the federal court finds the state court's decision was incorrect under state law. *Newton v. Million*, 349 F.3d 873, 879 (6th Cir. 2003). "Generally speaking, a state court's interpretation of the propriety of a jury instruction under state law does not entitle a habeas claimant to relief." *Rashad v. Lafler*, 675 F.3d 564, 569 (6th Cir. 2012).

In the present case, there was evidence that petitioner and Mr. McGee had confronted Mr. Patton and his associates. Petitioner drew his weapon and Mr. McGee began to draw his weapon. Petitioner is not entitled to habeas relief because the Michigan Court of Appeals reasonably concluded that the "mutual combat" portion of the instructions was supported by the evidence. *Hancock v. Trammell,* 798 F.3d 1002, 1018-20 (10th Cir. 2015). Petitioner is not entitled to relief on his fourth claim.

## IV. Conclusion

The Court will deny the petition for writ of habeas corpus with prejudice. The Court will also deny a certificate of appealability to petitioner. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). "The district court must issue or deny a certificate of appealability when it enters

a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254; *See also Strayhorn v. Booker*, 718 F. Supp. 2d 846, 875 (E.D. Mich. 2010).

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right. *See Allen v. Stovall*, 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001). The Court will also deny petitioner leave to appeal *in forma pauperis*, because the appeal would be frivolous. *Id.*

### V. ORDER

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is DENIED WITH PREJUDICE.

IT IS FURTHER ORDERED That a certificate of appealability is DENIED.

IT IS FURTHER ORDERED that Petitioner will be DENIED leave to appeal in forma pauperis.

X *Nancy Edmunds*
HON. NANCY G. EDMUNDS
UNITED STATES DISTRICT COURT JUDGE

Dated: 12-12-18